**Bernice SOKOL, Plaintiff-Appellee,**

v.

**Jacob L. BERNSTEIN, M.D.,
Defendant-Appellant.**

**No. 85–6357.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 1986.

Decided Oct. 28, 1986.

James E. Hornstein, Greenberg, Glusker, Fields, Claman & Machtinger, Los Angeles, Cal., for plaintiff-appellee.

Stuart R. Mandel, Beverly Hills, Cal., for defendant-appellant.

Before PREGERSON and HALL, Circuit Judges, and ORRICK,* District Judge.

ORRICK, District Judge:

The chief question presented in this case is whether a beneficiary of a pension plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, can recover extra-contractual damages, such as damages for emotional distress, caused by the arbitrary and capricious acts of the trustee of the plan. We hold that such extra-contractual damages cannot be recovered, and hence we reverse and remand.

I

Plaintiff-Appellee, Bernice Sokol, is the widow of Defendant-Appellant Jacob Bernstein's partner in medical practice. She is the sole beneficiary of her husband's pension plan, which Bernstein administered. Sometime in early 1982, Bernstein ordered the plan's trustee to distribute to Sokol the benefits in her account. The district court found that this disbursement violated an express written agreement dated December 6, 1979, to the effect that the funds would be distributed to Sokol only upon her request.

---

* Honorable William H. Orrick, Jr., United States District Judge for the Northern District of California, sitting by designation.

Realizing that the disbursement would create adverse tax consequences for her, Sokol requested on or about May 21, 1982, that Bernstein redeposit the funds. Bernstein refused to redeposit the funds unless Sokol agreed to waive her claims for breach of fiduciary duty against him, and agreed to pay administrative fees attributable to her portion of the plan. On July 25, 1982, Bernstein redeposited the funds.

Sokol then brought this action in the United States District Court for the Central District of California under ERISA, and after a two-day bench trial, the district court awarded Sokol $1,996.29 for loss of interest stemming from the wrongful failure to redeposit funds, $4,000 in medical expenses and damages for emotional distress, and $5,150 in attorney's fees.

## II

■ Preliminarily, we must determine whether the district court erred when it held that Bernstein breached his fiduciary duty toward Sokol. We have held that a trustee's actions may be reversed when they are arbitrary, capricious, or made in bad faith, not supported by substantial evidence, or erroneous on a question of law. *Elser v. I.A.M. National Pension Fund,* 684 F.2d 648, 654 (9th Cir.1982), *cert. denied,* 464 U.S. 813, 104 S.Ct. 67, 78 L.Ed.2d 82 (1983); *Fentron Industries, Inc. v. National Shopmen Pension Fund,* 674 F.2d 1300, 1307 (9th Cir.1982). Here, the trustee's violation of an express contract requiring beneficiary approval of disbursements, along with his failure to redeposit the funds promptly upon the plaintiff/beneficiary's request, constitute sufficient evidence for the district court to make a finding of fact and thus conclude that Bernstein acted in an arbitrary and capricious manner, and on this point we affirm the district court.

## III

### A.

■ We turn now to the core question of whether a beneficiary to a pension plan can recover damages for emotional distress under ERISA. In *Russell v. Massachusetts Mutual Life Insurance Co.,* 722 F.2d 482, 490 (9th Cir.1983), we held that a beneficiary of a pension plan could recover damages for mental or emotional distress under § 409 of ERISA, 29 U.S.C. § 1109. The Supreme Court reversed, stating that "we do not find in § 409 express authority for an award of extra-contractual damages to a beneficiary." *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985) (hereinafter cited as *"Russell"*). It is important to note that, mechanically applied to the present case, *Russell* is not dispositive; the district court herein relied on § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), rather than on § 409.[1] However, a textual exegesis of the *Russell* opinion, combined with careful examination of the statute's structure and legislative history, compels the conclusion that damages for emotional distress are unavailable under § 502(a)(3) as well as under § 409.

Section 409, which the *Russell* Court construed and relied upon, states in pertinent part:[2]

---

1. The district court did not specify in its findings of fact and conclusions of law upon which statutory provision it based the emotional distress award. However, because the Supreme Court's *Russell* opinion was cited to the court by Bernstein in the course of arguing his motion to amend the judgment, it must be presumed that the district court based its award on § 502(a)(3).

2. Section 409(a) states:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which may have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other *equitable or remedial relief as the court may deem appropriate*, including removal of such fiduciary....

(Emphasis added.) Section 502, relied upon by the district court in the present case, states in pertinent part: [3]

(a) *Persons empowered to bring a civil action*

A civil action may be brought—

. . . . .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) *to obtain other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan....

(Emphasis added.)

The *Russell* majority held squarely that a beneficiary may not recover extra-contractual damages, including damages for emotional distress, under § 409(a)'s provision for appropriate "equitable" relief.

However, as Sokol stresses, Justice Stevens' majority opinion (joined by Justices Powell, Rehnquist, and O'Connor, and Chief Justice Burger), expressly disclaimed any determination of whether § 502(a)(3)'s similar provision for "appropriate equitable relief" authorizes recovery of extra-contractual damages. *Russell*, 105 S.Ct. at 3089, n. 5. Justice Brennan's separate opinion concurring in the judgment, joined by Justices Marshall, White and Blackmun, also emphasized that the majority opinion did not expressly decide the availability *vel non* of damages for emotional distress under § 502(a)(3). *Id.* at 3095. Urging this Court to discount footnote 5 of the majority opinion and the admonitions of Justice Brennan's separate opinion, Bernstein argues that the rationale of the majority opinion in *Russell* requires the conclusion that damages for emotional distress cannot be recovered by a beneficiary under § 502(a)(3).

There is considerable support in *Russell* for the proposition that *no* provision in ERISA authorizes the award of extra-contractual damages. First, *Russell* held that the fiduciary duties set forth in § 409 run only to the plan, and not to individual beneficiaries. *Id.* at 3091–92. In so holding, the *Russell* Court used language implying that *all* of the statute's provisions relating to fiduciary duties run only to plans, and not to beneficiaries as individuals:

It is of course true that the fiduciary obligations of plan administrators are to

---

**3.** Section 502(a) states:

*Persons empowered to bring a civil action*

A civil action may be brought—

(1) by a participant or beneficiary—
(A) for the relief provided for in subsection (c) of this section, or
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to ob-

tain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;
(4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title;
(5) except as otherwise provided in subsection (b) of this section, by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter; or
(6) by the Secretary to collect any civil penalty under subsection (i) of this section.

serve the interest of participants and beneficiaries and, specifically, to provide them with the benefits authorized by the plan. But the principal statutory duties imposed on the trustees relate to the proper management, administration, and investment of fund assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest.

*Id.* at 3091 (footnote omitted). This language observes that the statute focuses not on the direct protection of a beneficiary's interests, but on the protection of the integrity of the plan in which the beneficiary is enrolled. Put another way, ERISA grants no private right of action by a beneficiary *qua* beneficiary; rather, it accords beneficiaries the right to sue on behalf of the entire plan if a fiduciary breaches the plan's terms. It should be noted that nothing in the above-quoted passage limits the rationale of *Russell* to § 409.

*Russell* sheds light on another major reason to disallow recovery of extra-contractual damages under § 502(a)(3)—Congress' glaring omission of any mention of extra-contractual damages in general, or emotional distress damages in particular:

Significantly, the statutory provision explicitly authorizing a beneficiary to bring an action to enforce his rights under the plan—§ 502(a)(1)(B) * * *—says nothing about the recovery of extra-contractual damages, or about the possible consequences of delay in the plan administrators' processing of a disputed claim.

*Id.* at 3091. Again, there is nothing in this excerpt to indicate that the underlying reasoning does not apply to § 502(a). On the contrary, the passage explicitly considers the remedies laid out in § 502(a)(1)(B). Although we presume the district court herein relied on § 502(a)(3), it must be noted that § 502(a)(3) also "says nothing about the recovery of extra-contractual damages," *Russell,* 105 S.Ct. at 3091, and emphasizes protection of the *plan,* not the direct protection of beneficiaries. So viewed, the catch-all phrase of "other ap-

propriate equitable relief" in § 502(a)(3) provides no more foundation for an award of emotional distress damages than does the same catchall phrase in § 409(a).

The *Russell* Court also rejected the argument that Congress meant to authorize damages for emotional distress, but simply forgot to mention them. The Court examined the six "carefully-integrated civil enforcement provisions" of § 502(a) and characterized those provisions as an "interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a 'comprehensive and reticulated statute.'" *Russell,* 105 S.Ct. at 3093 (citation omitted). The Court noted that if a plan's administrator refuses to disburse benefits, a beneficiary may file an action to recover accrued benefits; to get a judicial declaration of entitlement to benefits; and/or to enjoin the administrator from improperly refusing to pay such benefits in the future. *Id.* Moreover, a beneficiary may be entitled to have the fiduciary removed and to recover attorney's fees. *Id.* Justice Stevens' majority opinion then stated that where a statute "expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Russell,* 105 S.Ct. at 3091, quoting *Transamerica Mortgage Advisors, Inc. v. Lewis (TAMA),* 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979). Finally, Justice Stevens stated:

In contrast to the repeatedly emphasized purpose to protect contractually defined benefits, there is a stark absence— in the statute itself and in its legislative history—of any reference to an intention to authorize the recovery of extra-contractual damages.

*Russell,* 105 S.Ct. at 3093 (footnote omitted). Yet again, the logic in these observations applies as much to § 502(a)(3) as it does to § 409.

We recently recognized that the logic of *Russell* forecloses the availability of extra-contractual damages under § 502(a)(3) in *Hancock v. Montgomery Ward Long Term Disability Trust,* 787 F.2d 1302, 1306–07 (9th Cir.1986). There, the district court had denied the plaintiff's motion for addi-

tional discovery that would have been aimed at gathering evidence to support a claim for extra-contractual damages. Citing the Supreme Court's opinion in *Russell*, we held that extra-contractual damages should be unavailable under § 502(a)(3) as well as under § 502(a)(2).[4] Although our opinion in *Hancock* did not discuss the rationale for this holding at great length, it is clear that *Hancock* controls the disposition here and mandates reversal of the district court's award of damages for emotional distress.

### B.

From the preceding analysis of *Russell*, we think it clear that the Court's reasons for disallowing extra-contractual damages extend to § 502(a)(3), footnote 5 notwithstanding. However, even assuming *arguendo* that *Russell*'s rationale does not extend to § 502(a)(3), a conscientious examination of the statute's legislative history compels the conclusion that extra-contractual damages are unavailable.

The legislative history of ERISA supports the proposition that the entire statute was aimed at the protection of the integrity of pension plans, rather than at direct protection of beneficiaries. For example, the Senate Finance Committee described the remedies against a breaching fiduciary as follows:

> The bill specifically makes a fiduciary who breaches any of the specified duties personally liable; the fiduciary must make good any losses *which the plan sustained* from the breach and must restore *to the plan* any profits which he made using plan assets.

**4.** The Fourth and Fifth Circuits have also recently held that § 502(a)(3) does not provide for extra-contractual damages. *See Powell v. Chesapeake & Potomac Telephone Company of Virginia*, 780 F.2d 419, 424 (4th Cir. 1985), *cert. denied*, — U.S. —, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986); *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.*, 793 F.2d 1456, 1462–65 (5th Cir.1986), *reh'g denied*, 797 F.2d 977 (5th Cir.1986).

**5.** It is true that the preceding sentence of the committee report states:

S.Rep. No. 383, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 4639, 4890, 4988 (emphasis added).[5] Without question, this language indicates a legislative focus on the direct protection of plans, which in turn would provide protection to beneficiaries, participants, and the public in general. The same focus manifests itself in the House Conference Report:

> [A] fiduciary who breaches the fiduciary requirements of the bill is to be personally liable for any losses *to the plan* resulting from this breach. Such a fiduciary is also to be liable for restoring *to the plan* any profits which he has made through use of any plan asset. In addition, such a fiduciary is to be subject to other appropriate relief (including removal) as ordered by a court.

H.R. Conf. Rep. No. 1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 5038, 5100 (emphasis added). The last sentence of the above-quoted excerpt is not to be taken as *carte blanche* for the creation of new extra-contractual and compensatory remedies. The parenthetical material clearly indicates that Congress contemplated "other appropriate relief" to mean injunctive or declaratory relief, such as removal of the fiduciary. As a whole, the excerpted language shows a clear emphasis on warding off raids and other misuses of plan assets amounting to breaches of fiduciary duties.

Perhaps the most telling indication of what Congress meant by "appropriate equitable relief" appears in the Senate Finance Committee report on ERISA. The

> [T]he Secretary of Labor and participants and beneficiaries of a plan may bring civil actions for any appropriate *legal* or equitable relief to redress or restrain a violation of fiduciary duties.

*Id.* (emphasis added). However, as noted by the *Russell* Court, the reference in the statute to "legal" relief was later deleted and is, therefore, "of little help" in understanding whether Congress intended to make extra-contractual remedies available. *Russell*, 473 U.S. 134, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985).

Committee's definition of such relief is worth reviewing at length:

> Appropriate equitable relief may be granted in a civil action. For example, injunctions may be granted to prevent a violation of fiduciary duty, and a constructive trust may be imposed on the plan assets, if needed to protect the participants and beneficiaries. Also, the bill specifically provides that a fiduciary may be removed through civil action brought by the Secretary or participants or beneficiaries if he has violated any of the specified fiduciary obligations.... It is expected that a fiduciary ... may be removed for repeated or substantial violations of his responsibilities, and that upon removal the court may, in its discretion, appoint someone to serve until a fiduciary is properly chosen in accordance with the plan.

S.Rep. No. 383, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 4890, 4989. Despite Justice Brennan's reservations, *see Russell,* 105 S.Ct. at 3097 n. 10 (Brennan, J., concurring in the judgment), it appears that Congress used the word "equitable" to mean what it usually means—injunctive or declaratory relief.[6] The above-quoted definition of "appropriate equitable relief" lists three distinct remedies (injunction, constructive trust, and removal), all of which are closely tied to the plan. For us to add an extra-contractual remedy to a list of remedies so strongly contractual in nature would be to step beyond the province of the judiciary and into that of the legislature.

We hold that because of the rationale of *Russell,* and because of ERISA's structure and legislative history, § 502(a)(3) makes no provision for extra-contractual damages, including damages for emotional distress.[7] Accordingly, the district court's judgment must be reversed and remanded for a determination of the amount of emotional distress damages that were awarded Sokol.

## IV

■ We now address the question of attorney's fees. Because ERISA commits the award of fees to the district court's discretion, its determination should be reversed only for abuse of that discretion. *See Hummel v. S.E. Rykoff & Co.,* 634 F.2d 446, 452 (9th Cir.1980). The district court should take at least five factors into account in deciding whether to award fees: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Id.*

■ Here, the factors weigh in Sokol's favor. The district court found that Bernstein had acted arbitrarily and capriciously. Bernstein does not argue that he is unable to satisfy the modest award. On appeal, Sokol sought to resolve a significant legal question regarding ERISA, i.e., the availability *vel non* of damages for emotional distress under § 502(a)(3). Finally, there is no question but that the equities in this

---

6. Attempting to paint emotional distress damages as "equitable," Sokol urges the Court to look toward the common law of trusts as developed by the states. Brief of Plaintiff/Appellee 7–10. The legislative history of ERISA, however, counsels against such reference to state law:

> The uniformity of decision which the Act is designed to foster will help administrators, fiduciaries and participants to predict the legality of proposed actions without the necessity of reference to varying state laws.

H.R.Rep. No. 533, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 4650; S.Rep. No. 127, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 4838, 4865.

7. Sokol asks the court to imply a remedy for emotional distress into § 502(a)(3) under the authority of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). We decline to do so for the reasons set forth in *Russell, supra* n. 5, 105 S.Ct. at 3092–94.

litigation lie with Sokol. We affirm the district court's award of fees.

## V

The judgment of the district court is affirmed in all respects except the award of damages for emotional distress, which is reversed. The case is remanded for a determination of what portion of the $4,000 award was for medical expenses and what portion was for emotional distress damages, and for further proceedings not inconsistent with this Opinion.