Sterling CALL, Ralph Robinson, and Edison Willers, as individuals; Sterling Call and Ralph Robinson, as Plan Administrators of the Phase II Corporation Restated Profit Sharing Plan; and Sterling Call, Kenneth Friedman, and Edison Willers as Plan Administrators of the California Etching Corporation Restated Profit Sharing Plan, Plaintiffs,

v.

SUMITOMO BANK OF CALIFORNIA, a California Corporation, Ray W. Sherman, Jr., an individual, Khateeb A. Lateef, an individual, and Lateef Management Associates, a partnership, Defendants.

No. C–87–2271 EFL.

United States District Court,
N.D. California.

June 28, 1988.

Bruce H. Jackson, Baker & McKenzie, San Francisco, Cal., for plaintiffs.

David B. Flinn, Esq., Leland, Parachini, Steinberg, Flinn, Matzger & Melnick, Steven E. Schon, Howard, Rice, Nemerovski, Canady, Robertson & Falk, San Francisco, Cal., for defendants.

## MEMORANDUM DECISION

LYNCH, District Judge.

Plaintiffs brought this action under the federal Employee Retirement Income Security Act ("ERISA"), seeking recovery individually and on behalf of two ERISA-regulated Profit Sharing Plans. The case is presently before the Court on defendants' motion to dismiss. For the reasons explained below, this Court grants the motion.

## FACTS

According to plaintiffs' complaint, the facts are as follows. In December 1980, the Administrative Committees of the Phase II Corporation Restated Profit Sharing Plan and the California Etching Corporation Restated Profit Sharing Plan decided to invest in a residential real estate development project. Initially, the plans each invested $100,000. They later added another $30,000 apiece. While the plans were making these decisions—allegedly on the advice of defendants Khateeb Lateef and Lateef Management Associates—plaintiffs were all participants in at least one of the plans. Additionally, plaintiffs were all members of one or both of the plans' Administrative Committees.

As part of the real estate deal, defendant Sumitomo Bank, the trustee for the plans, and defendant Roy Sherman, the escrow holder, executed escrow instructions. These instructions provided that Sherman would deliver to Sumitomo a recorded deed of trust securing promissory notes that the plans had received in return for their investment. Unfortunately, neither Sherman nor Sumitomo recorded the trust deed.

On June 4, 1984, the entity in which the plans had invested filed for reorganization under the Bankruptcy Act. In part because the plans were unsecured as a result

of the failure to record the trust deed, the investment was a total loss.

Approximately two years later, the United States Department of Labor ("DOL") concluded an investigation of these events and determined that plan fiduciaries had violated their duties under ERISA in their initial participation and subsequent handling of the real estate investment. The DOL ordered restoration of the funds lost as a result of the breach of duty.

Plaintiffs complied with the order through a combination of actual deposits to the plans and forfeitures of their own individual plan accounts. In other words, rather than simply deposit an amount in each plan equal to the lost principal and earnings, plaintiffs paid in less than the actual loss and made up the difference by forfeiting their own accounts. The DOL approved this method of restoring plan funds.

After reimbursing the plans, plaintiffs brought the present action against Lateef, Lateef Management Associates, Sumitomo Bank and Sherman. Plaintiffs assert that defendants are at least equally culpable for the loss and seek recovery for themselves and for the plans.

## DISCUSSION

Plaintiffs assert three causes of action. The first cause of action alleges that defendants breached their fiduciary duties under ERISA, entitling the plans to recover amounts equal to the forfeited accounts. The second claim is one for contribution, in which plaintiffs as individuals seek recovery of some portion of the amounts actually deposited to the plans on the ground that defendants have not borne their "fair share" of the loss resulting from the alleged breach of fiduciary duty. Finally, plaintiffs assert a claim on behalf of the plans against defendant Sherman for "nonfiduciary liability under ERISA." The Court will address the claims in the order presented.

### A. The Claim for Breach of Fiduciary Duty

■ As noted above, plaintiffs' first claim asserts that each defendant was a

plan fiduciary at the time of the real estate investment,[1] and that defendants' conduct in connection with that transaction was a breach of their fiduciary duties. Plaintiffs bring this claim on behalf of the plans,[2] seeking recovery of the amounts forfeited pursuant to the DOL order.

Defendants contend that it is apparent from the allegations in the complaint that the plans were fully compensated for the losses suffered as a result of the real estate debacle. Plaintiffs respond that the plan was compensated only to the extent funds were actually deposited, thus creating a shortfall equal to the forfeitures. According to this argument, the plans were undercompensated because the forfeitures did not replenish plan assets. In other words, plan assets were not restored to the level where they would have been had the fiduciaries prudently invested the funds.

The fallacy in this argument is that it fails to acknowledge that, while the forfeitures did not increase plan assets, they did reduce plan liabilities. To the extent plaintiffs forfeited their accounts, the plans are no longer obligated to pay benefits. Clearly, therefore, the *net* effect of the reimbursement arrangement is to put the plans in the same position they would have occupied absent the breach. By examining only one side of the balance sheet, plaintiffs create an illusion that the reimbursement

arrangement approved by the DOL left the plans short. But once the effect of the forfeitures on plan liabilities is figured into the equation, the error in plaintiffs' reasoning is apparent. Accordingly, any claim on behalf of the plans for losses incurred by virtue of the failed real estate investment must fall, since the plans are not entitled to any further recovery.

### B. *The Claim For Contribution*

In their second cause of action, the individual plaintiffs seek contribution from defendants for amounts actually deposited to the plans. Quite plausibly, plaintiffs contend that defendants breached their fiduciary duties in connection with the real estate transaction, and that defendants should therefore bear some of the burden for the resulting loss. The issue, however, is whether ERISA authorizes an action for contribution on behalf of individual plaintiffs.

According to the complaint, defendants' liability stems from two ERISA provisions. ERISA section 409 [3], 29 U.S.C. § 1109, provides that a fiduciary who breaches a duty imposed by ERISA shall be personally liable for any resulting loss.[4] In addition, section 405, 29 U.S.C. § 1105, provides that one fiduciary may be liable under certain circumstances for the acts or omissions of

---

**1.** Defendant Sherman argues that he was not a fiduciary and therefore cannot be held liable under the first two causes of action. In light of this Court's disposition of the action, it is unnecessary to address this issue.

**2.** Defendants maintain that this claim is, in fact, an attempt by plaintiffs to recover personally. Since ERISA does not permit damage claims on behalf of individuals, defendants argue, this claim must fall. While it does appear that plaintiffs seek by this claim to replenish their personal accounts within the plans, they insist that the claim is strictly on behalf of the plans. The language of the complaint, which demands that defendants "make good to the Plans," supports plaintiffs on this point. Accordingly, the Court assumes that this claim is asserted only on behalf of the plans and not by plaintiffs individually. In any event the issue of individual claims under ERISA is addressed in section B. below.

**3.** All statutory references are to ERISA, U.S.C. title 29, unless otherwise specified.

**4.** Section 409 reads as follows:

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

(b) No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.

another fiduciary.[5] But the section also allows fiduciaries to avoid this type of liability by explicitly allocating duties and responsibilities.

ERISA section 502(a) authorizes private actions to enforce these and other liability provisions. 29 U.S.C. § 1132(a).[6] Section 502(a), however, permits only certain parties to initiate civil lawsuits and specifies the type of relief available, depending on the party and the basis for the suit. Two of the section's subparagraphs are relevant here. Subparagraph (2) authorizes plan participants and fiduciaries, among others, to sue for "appropriate relief" under section 409, the main fiduciary liability provision. Subparagraph (3) authorizes civil actions by participants and fiduciaries to enjoin ERISA violations, or to "obtain other appropriate equitable relief" to redress violations or enforce ERISA's provisions.

Plaintiffs appear to rely on both provisions in this action. This Court therefore must determine whether either of these potentially applicable civil remedy measures authorize plaintiffs to bring their claim for contribution.

### 1. ERISA Section 502(a)(2)

█ Under section 502(a)(2), a plan participant may bring suit for breach of fiduciary duty as provided in section 409. Section 409, in turn, subjects plan fiduciaries to personal liability for breach of any duty imposed by ERISA. The question, therefore, is whether the liability imposed upon fiduciaries by section 409 includes liability for contribution to co-fiduciaries as individuals.

In support of their argument that section 409 does not create such liability, defend-

---

**5.** Section 405 reads in pertinent part as follows:

**(a) Circumstances giving rise to liability**

In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

. . . .

**(c) Allocation of fiduciary responsibility; designated persons to carry out fiduciary responsibilities**

(1) The instrument under which a plan is maintained may expressly provide for procedures (A) for allocating fiduciary responsibilties (other than trustee responsibilities) among named fiduciaries, and (B) for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan.

(2) If a plan expressly provides for a procedure described in paragraph (1), and pursuant to such procedure any fiduciary responsibility of a named fiduciary is allocated to any person, or a person is designated to carry out any such responsibility, then such named fiduciary shall

not be liable for an act or omission of such person in carrying out such responsibility except to the extent that—

(A) the named fiduciary violated section 1104(a)(1) of this title—

(i) with respect to such allocation of designation,

(ii) with respect to the establishment or implementation of the procedure under paragraph (1), or

(iii) in continuing the allocation or designation; or

(B) the named fiduciary would otherwise be liable in accordance with subsection (a) of this section.

**6.** Section 502(a) reads in pertinent part as follows:

**(a) Persons empowered to bring a civil action**

A civil action may be brought—

(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. . . .

ants rely primarily on *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1984). In *Russell,* the Supreme Court held that ERISA does not authorize "extracontractual damages," i.e., punitive damages or a tort measure of compensatory damages. The Court reached this decision by first determining that section 409 does not expressly authorize claims by parties other than the plan. "[T]he entire text of § 409 persuades us that Congress did not intend that section to authorize any relief except for the plan itself." *Id.* at 144, 105 S.Ct. at 3091.

The Court then declined to imply a remedy for extracontractual damages under the four-factor test employed in *Cort v. Ash,* 422 U.S. 66, 68, 95 S.Ct. 2080, 2083, 45 L.Ed.2d 26 (1975). The Court acknowledged that two of the *Cort* factors—whether the plaintiff is a member of the class for whose benefit the statute was enacted and whether there is a state law impediment to implying a remedy—favored implication of an extracontractual damages remedy. 473 U.S. at 145, 105 S.Ct. at 3091–92. But the other two factors—legislative intent and consistency with the legislative scheme—pointed in the other direction. "The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Id.* at 146, 105 S.Ct. at 3092 (emphasis in original).

Plaintiffs attempt to distinguish *Russell* on the ground that it did not deal with a claim for contribution, but rather the different remedy of extracontractual damages. They urge this Court to follow instead the pre-*Russell* decision in *Free v. Briody,* 732 F.2d 1331 (1984), in which the Seventh Circuit held that section 409 allows a passive trustee to seek indemnification from a more culpable active trustee.

*Free* found no explicit statutory right to indemnification, but observed that this is not dispositive " '[i]f, among other things the language of the statute[ ] indicates that [it was] enacted for the special benefit of a class of which petitioner is a member.' " *Id.* at 1337 (quoting *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 91–92, 101 S.Ct. 1571, 1581, 67 L.Ed.2d 750 (1981)). The court apparently determined that plan fiduciaries are members of such a class because the co-fiduciary liability provision applies only in some circumstances and allows apportionment of liability through designation of responsibilities. The court then found a co-fiduciary indemnification remedy implicit in section 409, based partly on the language authorizing "such other equitable or remedial relief as the court may deem appropriate," and partly on its conclusion that Congress intended ERISA to "codify the principles of trust law." *Id.* at 1336.

This Court declines to follow *Free* for several reasons. First, it is distinguishable. Unlike plaintiffs in this case, the fiduciary seeking indemnity in *Free* was a passive trustee held liable under section 405 for his co-fiduciary's conduct. In allowing the indemnity claim, the court relied on a general trust law principle authorizing a court to indemnify a passive trustee subject to liability for an active co-trustee's misconduct. Since plaintiffs here were neither passive wrongdoers nor held liable strictly on a co-fiduciary theory, the trust principle invoked in *Free* would not apply here. Moreover, the *Free* opinion itself indicated that its holding was a narrow one when it stated that "[a]n award of indemnification *within the limited circumstances of this case* appears to us to be properly within the court's equitable powers." *Id.* at 1337 (emphasis added).

Second, this Court is unpersuaded by the reasoning in *Free.*[7] The *Free* court's sug-

**7.** Even the Seventh Circuit itself appears poised to reconsider the ruling *Free.* Judge Posner, writing for the court in *Donovan v. Robbins,* 752 F.2d 1170 (7th Cir.1984), assumed without deciding that the rule in *Free* was correct, but recast it as a "dictum," and intimated doubt about its soundness:

Although the common law's rejection of contribution among joint tortfeasors has itself been rejected by most states and most commentators, the Supreme Court remains

gestion that plan fiduciaries are "members of the class for whose *especial* benefit" ERISA was enacted, *Northwest Airlines,* 451 U.S. at 92, 101 S.Ct. at 1581 (emphasis added), flies in the face of the statute's explicitly stated purpose to "protect interstate commerce and the *interests of participants in employee benefit plans and their beneficiaries* ... by establishing standards of conduct, responsibility and obligation of fiduciaries of employee benefit plans...." 29 U.S.C. § 1001(b) (emphasis added); *see also McClendon v. Continental Group, Inc.,* 7 Employee Benefits Cas. 2403, 2407 (D.N.J.1986) [available on WESTLAW, 1986 WL 11789]. Similarly, ERISA's co-fiduciary liability provisions, to the extent they bear on this issue at all, cut against the conclusion reached in *Free.* Far from indicating congressional intent to allow indemnity and contribution actions among plan fiduciaries, section 405 actually expands a fiduciary's exposure to personal liability. Indeed, the allocation of responsibility provision may be read to reflect an expectation that, unless the plan fiduciaries employ this allocation procedure, an individual fiduciary may well be personally saddled with losses attributable primarily to the wrongdoing of others.

The third and most important reason this Court declines to follow *Free* is that it cannot be reconciled with *Russell. Russell* rejected the proposition, apparently accepted in *Free,* that the "catchall" language in section 409—allowing such relief as the court finds appropriate—authorizes a remedy on behalf of a party other than the plan itself:

To read directly from the opening clause of 409(a), which identifies the proscribed acts, to the "catchall" remedy phrase at the end—skipping over the intervening language establishing remedies benefitting, in the first instance, solely the plan—would divorce the phrase being construed from its context and construct an entirely new *class* of relief available to entities other than the plan.... A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than the rights of an individual beneficiary.

*Russell,* 473 U.S. at 141–42, 105 S.Ct. at 3090 (emphasis in original).

In addition, the *Free* court completely ignored the second major principle enunciated in *Russell:* that ERISA's comprehensive civil remedy scheme reflects a congressional intent that the remedies explicitly provided be the *only* remedies available under the statute. Thus, even if *Free* were correct at the time it was decided, the Supreme Court's ruling in *Russell* effectively undermines its precedential value.[8]

In short, this Court is persuaded that *Russell* mandates the conclusion that section 409 does not authorize plan fiduciaries, as individuals, to bring an action for contribution against their co-fiduciaries. While plaintiffs are correct that the remedy sought in *Russell* was different than the one sought here,[9] the two central principles underlying *Russell*—that fiduciary liability under section 409 runs only to the plan and that ERISA's civil remedy scheme is exclu-

---

reluctant to use its own common law powers to allow contribution under federal statutes that do not provide for it expressly. [citations omitted] And ERISA does not. But this court has twice said in dictum that contribution is available under ERISA, *see Free v. Briody,* 732 F.2d 1331, 1337 (7th Cir.1981) ... and we shall assume, without having to decide, that these dicta are correct.

*Id.* at 1178.

**8.** Plaintiffs cite only one post-*Russell* decision permitting a right of contribution between ERISA co-fiduciaries. *See Brock v. Self,* 632 F.Supp. 1509 (W.D.La.1986). But *Brock* simply

assumed the availability of such a remedy and failed entirely to mention *Russell.* Accordingly, this Court finds little persuasive force in that decision.

**9.** In a footnote, the *Russell* Court stated that it was not deciding "the extent to which sec. 409 may authorize recovery of extra-contractual compensatory and punitive damages from a fiduciary by a *plan.*" *Russell,* 473 U.S. 144 n. 12, 105 S.Ct. at 3091 n. 12 (emphasis in original). Thus the Court made plain that the nature of the remedy was important to the decision only insofar as ERISA's civil remedy provisions do not explicitly provide for it.

sive—apply with equal, if not greater, force in this case. Like the plaintiff in *Russell*, the plaintiffs here seek a recovery not on behalf of the plan, but as individuals, and request a remedy not enumerated in ERISA's comprehensive civil remedy provisions. Accordingly, plaintiffs may not bring their claim for contribution pursuant to section 502(a)(2).

### 2. *ERISA Section 502(a)(3)*

While section 502(a)(2) only authorizes suits based on the liability imposed by section 409, section 502(a)(3) allows a claim to enforce *any* ERISA provision, or to remedy *any* ERISA violation. Therefore, plaintiffs' authority to sue under this subparagraph does not turn exclusively on a reading of section 409. Nor is *Russell* directly controlling, because, as plaintiffs are quick to point out, the *Russell* Court expressly reserved judgment on the scope of section 502(a)(3). "Because respondent relies entirely on section 409(a), and expressly disclaims reliance on section 502(a)(3), we have no occasion to consider whether any other provision of ERISA authorizes recovery of extra-contractual damages." 473 U.S. at 139 n. 5, 105 S.Ct. at 3088 n. 5.

However, in *Sokol v. Bernstein*, 803 F.2d 532 (9th Cir.1986), the Ninth Circuit extended both the rule and the reasoning of *Russell* to section 502(a)(3):

It is important to note that, mechanically applied to the present case, *Russell* is not dispositive; the district court herein relied on section 503(a)(3) of ERISA, 29 U.S.C. sec. 1132(a)(3), rather than on section 409. However a textual exegesis of the *Russell* opinion, combined with careful examination of the statute's structure and legislative history, compels the conclusion that damages for emotional distress are unavailable under section 502(a)(3) as well as § 409.

*Id.* at 534 (footnote omitted).

Plaintiff again argues that the distinction between the extracontractual damages

remedy sought in *Sokol* and the contribution remedy requested here makes *Sokol* inapplicable. But, as in *Russell*, the *Sokol* court's reasoning renders this distinction unimportant. *Sokol* in effect extended the principle applied in *Russell*—that fiduciary liability under section 409 runs only to the plan—to *all* fiduciary duties under ERISA:

*Russell* held that the fiduciary duties set forth in section 409 run only to the plan, and not to individual beneficiaries. In so holding the *Russell* Court used language implying that *all* of the statute's provisions relating to fiduciary duties run only to plans, and not to beneficiaries as individuals.... Put another way, ERISA grants no private right of action by a beneficiary *qua* beneficiary; rather it accords beneficiaries the right to sue on behalf of the entire plan if fiduciary breaches the plan's terms.

*Id.* at 535–36.[10]

■ By extending this aspect of *Russell* to section 502(a)(3), *Sokol* effectively eliminated that section as a source of express authority for plaintiff's claim for contribution. Read together, *Russell* and *Sokol* establish a rule that ERISA expressly authorizes only the employee benefit plan itself to bring an action on a theory of breach of a fiduciary duty under ERISA. Since plaintiffs' contribution claim is premised on just such a theory—either under section 409 for direct fiduciary liability or under section 405 for co-fiduciary liability —and seeks recovery for the individual fiduciaries, it is barred unless ERISA implicitly created a cofiduciary contribution remedy.

The cases, however, foreclose implication of an individual right to contribution under ERISA. *Sokol* declined to imply an extracontractual damages remedy into section 502(a)(3) "for the reasons set forth in *Russell*." *Id.* at 538 n. 7. Thus *Russell* and *Sokol* illustrate the courts' extreme reluctance to imply a remedy into a statute,

---

**10.** The *Sokol* court may have slightly overstated the rule to the extent it implied that a beneficiary may never sue on his or her own behalf. ERISA explicitly authorizes such suits when the beneficiary seeks recovery of benefits or statu-

tory fines for failure to provide certain information. *See* 29 U.S.C. sec. 1132(a)(1). Read in context, the *Sokol* opinion does not suggest otherwise.

especially when that statute provides a detailed remedial framework. More importantly, they clearly establish that, absent a clear indication in the statutory language, structure or legislative history, courts must not "tamper with an enforcement scheme crafted with such evident care as the one in ERISA." *Russell*, 473 U.S. at 147, 105 S.Ct. at 3093. No such indication is present here.

Indeed, this case is highly analogous to the decision in *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981). In *Northwest Airlines*, an employer had been held liable to an employee in a previous action under Title VII and the Equal Pay Act because of male/female wage differentials set by a collective bargaining agreement with the union. The *Northwest Airlines* Court was faced with the employer's subsequent action against the union for contribution. Applying the four-factor approach established in *Cort*, *Northwest Airlines* held that Title VII does not authorize such a claim.

*Northwest Airlines* began the *Cort* analysis by noting that the employers were not members of the class for whose "especial" benefit the statute was enacted. *Id.* at 92, 101 S.Ct. at 1581. Next the Court observed that the structure of the statute disfavored implication of a contribution right:

> The statutes make express provision for private enforcement in certain carefully defined circumstances, and provide for enforcement at the instance of the Federal Government in other circumstances. The comprehensive character of the remedial scheme expressly fashioned by Congress strongly evidences an intent not to authorize additional remedies. It is, of course, not within our competence as federal judges to amend these comprehensive enforcement schemes by adding to them another private remedy not authorized by Congress.

*Id.* at 93–94, 101 S.Ct. at 1581–82. Finally, after observing that the legislative history was largely silent on this point, the Court concluded that "we have been unable to discover any manifestation of an intent on the part of Congress to create a right of contribution in favor of employers under the Equal Pay Act and Title VII." *Id.* at 94, 101 S.Ct. at 1582.

With the exception of the names of the statutes involved, *Northwest Airlines* applies to this case almost verbatim. Like the employer in that case, plaintiffs here, as plan fiduciaries, are not members of the class for whose benefit ERISA was enacted. As noted above, ERISA's explicit statement of policy unmistakably establishes that the statute aims to protect plan participants and beneficiaries, and *not* plan fiduciaries. Moreover, as *Russell* and *Sokol* make clear, ERISA, like the statutes involved in *Northwest Airlines*, provides a comprehensive remedial scheme reflecting an intent that no further remedies be added. Finally, just as the legislative histories of the Equal Pay Act and Title VII are silent regarding the right of contribution, so is ERISA. *See McClendon*, 7 Employee Benefits Cas. at 2407.[11] Thus, for the same reasons given in *Northwest Airlines*, *Russell* and *Sokol*, this Court declines to recognize an implied right of contribution on behalf of fiduciaries as individuals under ERISA.

In some ways, this conclusion may seem counterintuitive. After all, from the face of plaintiffs' complaint, it appears that defendants are culpable and it would therefore seem unfair for plaintiffs to bear the entire loss. But *Northwest Airlines* makes clear that these considerations cannot provide the basis for recognizing rights not expressly granted by statute:

> In this case we assume that all of the elements of a typical contribution claim are established. This means that we assume that the plaintiffs [who recovered

11. Like the plaintiff in *McClendon*, plaintiffs here argue that, although the legislative history contains no mention of a right of contribution, it arguably indicates an intent to adopt general trust principles. Just as the *McClendon* court was unpersuaded, so is this Court. This is far too vague a reference to overcome the strong language in *Russell* and *Sokol* that ERISA's remedial scheme is intended to be exclusive.

from the employer] could have recovered from either the union or the employer ... and that it is unfair to require [the employer] to pay the entire judgment. Furthermore ... we assume that the policy considerations favor recognition of the right. And, as argued by [the employer], we assume that the respondent unions in this case, as well as other unions in other industries, bear significant responsibility for discriminatory practices that these statutes were designed to prohibit.... None of these assumptions, however, provides a sufficient basis for recognize the right petitioner is asserting in this proceeding.

*Northwest Airlines,* 451 U.S. at 89–90, 101 S.Ct. at 1580.

In summary, by extending the reasoning of *Russell* to section 502(a)(3), *Sokol* leaves no serious doubt that a right of cofiduciary contribution is unavailable under ERISA. At a minimum, it establishes that section 502(a)(3) provides no such express right. And under *Northwest Airlines,* this Court may not imply a right of contribution into ERISA. Accordingly, plaintiffs second cause of action fails to state a claim upon which relief can be granted.

### 3. *The Claim for Nonfiduciary Liability*

Plaintiffs' third claim is against Sherman as a nonfiduciary charging liability for his role in failing to record the trust deed. This Court's discussion of the first two claims effectively disposes of the this claim. If it is asserted on behalf of the plan, it fails because the plan has been fully compensated. If it is asserted on behalf of the plaintiffs individually, it is essentially a claim for individual contribution and therefore fails because ERISA permits no such claim. Consequently, this claim must also be dismissed.

### CONCLUSION

As the discussion above demonstrates, the parties who actually suffered a loss here are not the plans, but the individual plaintiffs. The plans have been repaid at the individual plaintiffs' expense. Under-

standably, they would like the other responsible parties to share that cost. But the law is clear that plaintiffs are fully liable for the loss and have no right to recoup that liability from others. Although this rule may seem harsh, recourse lies in Congress, as the courts are without authority to amend the scheme established by statute. Accordingly, plaintiffs' complaint is dismissed with prejudice in its entirety.

IT IS SO ORDERED.