The **NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Plaintiff,**

v.

**RESOLUTION TRUST CORPORATION, in its capacity as Receiver for City Federal Savings & Loan Association; and Jesse E. Miller, Thomas W. Harris, Jr., Lewis C. Wheeler, Emmett C. Gardner, Louie A. Williams, Jr., Richard H. Vigneulle, Defendants.**

No. CV 91–L–2967–S.

United States District Court,
N.D. Alabama, S.D.

Feb. 11, 1994.

Katherine T. Millett, William Carlisle Herbert, and Adam Kingsley, Hopkins & Sutter, Chicago, IL, for Resolution Trust Corp.

J. Franklin McCreary, Gerrish & McCreary, Memphis, TN, for individual claimants.

### MEMORANDUM OPINION AND ORDER OF PARTIAL SUMMARY JUDGMENT

LYNNE, Senior District Judge.

This interpleader action was brought by Northwestern Mutual Life Insurance Company ("Northwestern") to determine the ownership of eight whole life insurance policies (the "Policies"). The individually named defendants (the "Claimants") are former officers or directors of City Federal Savings and Loan Association, Birmingham, Alabama ("City Federal"). On September 14, 1990, the Office of Thrift Supervision appointed the Resolution Trust Corporation receiver (the "Receiver") of City Federal for purposes of liquidation.

Prior to being placed in receivership, City Federal had entered into Deferred Compen-

sation Agreements ("DCAs") and Supplemental Retirement Income Agreements ("SRIAs") with certain of its executives and directors. As discussed below, City Federal purchased the Policies in connection with these agreements so that by recovering death benefits, City Federal could recoup its costs of paying retirement benefits under the SRIAs and DCAs.

The Receiver surrendered the Policies to Northwestern on June 7, 1991 and demanded payment of their cash surrender value. Northwestern refused the surrender because the Claimants notified Northwestern that they objected to any payment being made to the Receiver and claimed ownership of the Policies. The Claimants filed claims with the Receiver on August 7, 1991 asserting that the Policies were subject to a constructive trust in their favor and subsequently asserted similar rights by counterclaim in this action. The Receiver counterclaimed against Northwestern asserting title to the Policies as successor to City Federal. Northwestern subsequently deposited in the Registry of the Court the cash surrender value of the Policies, determined as of December 18, 1991, and was discharged from the case by order entered June 15, 1993.

The Receiver moved for partial summary judgment in its favor with respect to the Policies on the ground that the DCAs and SRIAs unequivocally establish that City Federal owned the Policies and that the Receiver succeeded to all rights, title and interest to the Policies by operation of law pursuant to 12 U.S.C. § 1821(d)(2)(D).

The Court hereby grants partial summary judgment to the Receiver, declaring that the Receiver is entitled to immediate payment of the cash surrender value of the Policies, plus accrued interest, currently held in the Registry of the Court. The Court does not here decide the two remaining issues of law concerning (1) whether Claimants Harris and Gardner obtained vested rights to receive benefits under their SRIAs and DCA, and (2) whether this Court has jurisdiction to order the Receiver to pay the present value of benefits to all Claimants who are determined to have vested rights, as well as the single remaining issue of fact as to the correct present value of such benefits.

■ The DCAs and SRIAs are "employee benefit plans" within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"). ERISA Section 3 states that an employee benefit plan includes "an employee pension benefit plan," which is separately defined as "any plan ... maintained by an employer ... to the extent that ... such plan ... (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond...." 29 U.S.C. § 1002(2)(A) & (3) (1993). ERISA Section 4 provides that ERISA, with certain exceptions, applies to "any employee benefit plan" maintained by an employer engaged in commerce. *Id.* § 1003(a)(1).

The threshold question is whether the Agreements constitute a "funded" employee benefit plan, a question that runs through all of the ERISA provisions affecting or potentially affecting the Claimants' rights. *See* 29 U.S.C. §§ 1003(b)(5) (excess benefit plans); 1081(b)(1) (insurance contract plans); 1101(a)(1), 1051(2), and 1081(a)(3) ("top hat" plans for highly compensated individuals).

■ The essential feature of a funded plan is that its assets are segregated from the general assets of the employer and are not available to general creditors if the employer becomes insolvent. Thus, ERISA regulation 29 C.F.R. § 2510.3–102 provides that a plan participant's contributions to a benefit plan fund, whether made directly by the participant or withheld by the employer, become plan assets *only* when "such contributions can reasonably be segregated from the employer's general assets."

The Agreements prohibited City Federal from segregating the Policies claimed by the Claimants from the institution's general assets. The SRIAs and DCAs each provide that any insurance policy City Federal might choose to purchase "shall be and remain a general, unpledged, and unrestricted asset of the Association."

The Policies purchased by City Federal did not provide a mechanism for the payment

of plan benefits. The Agreements provided for retirement benefits to be paid by City Federal while the Claimants were living. The Policies provided for payment to City Federal after each Claimant's death. In other words, the Policies were designed to provide later compensation to City Federal—after it had made the payments prescribed under the Agreements out of its own general assets.

In return for the retirement benefits City Federal agreed to pay, the Claimants accepted the risk of looking only to City Federal's general assets for such benefits. The Agreements specifically provided that the Claimants would have "no interest whatsoever" in any life insurance policies purchased by City Federal in connection with the Agreements and that each Claimant's rights would be "solely those of an unsecured creditor." In short, the Policies were not assets of the plans created by the Agreements, but instead were general, unpledged and unrestricted assets of City Federal.

In this respect, the DCAs and the SRIAs are like the plans at issue in *Belsky v. First National Life Insurance Company,* 818 F.2d 661 (8th Cir.1987).[1] Like the DCAs and the SRIAs, the *Belsky* plan provided that the employer could, at its discretion, purchase life insurance to cover the cost of paying benefits to certain key employees. The *Belsky* agreement provided that any life insurance policy purchased would "remain a general, unpledged, unrestricted asset" of the bank and that the rights of the participating employee would be "solely those of an unsecured creditor." 818 F.2d at 663. On the basis of these provisions, the court held that the plan was unfunded. The court specifically noted that there was "no *res* separate from the corporation to which [the employee] could look to satisfy the liability of the plan." *Id.* at 663–64. For the same reason, the City Federal Agreements are unfunded plans. *See also Belka v. Rowe Furniture Corp.,* 571 F.Supp. 1249 (D.Md.1983).

The DCAs and SRIAs differ fundamentally from benefit plans in which insurance policies

provide an immediate source of funding to pay benefits. They differ from the plan at issue in *Dependahl v. Falstaff Brewing Corp.,* 491 F.Supp. 1188 (E.D.Mo.1980), *aff'd in part and rev'd in part,* 653 F.2d 1208 (8th Cir.), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981), in which an employer agreed to provide death benefits to its employees in the form of proceeds from policies insuring the lives of the employees. The life insurance proceeds in *Dependahl* were specifically dedicated to the payment of plan benefits. The event that triggered the right to receive benefits—the employee's death—also triggered reimbursement of the employer for premiums it had paid from its general assets. 491 F.Supp. at 1195. The policies constituted a separate *res,* and the plan was funded under ERISA. 653 F.2d at 1214. In contrast, the Claimants could not look to the Policies owned by City Federal or any separate *res* to pay their retirement benefits.

This distinction is entirely consistent with the ERISA provisions concerning an "insurance contract plan," which is exempted from ERISA's minimum funding standards. An insurance contract plan is by definition a "funded" plan, and it provides for plan benefits "guaranteed by an insurance carrier...." 29 U.S.C. § 1081(b)(1) & (3). As noted above, City Federal's plan obligations were not guaranteed by the Policies.

This distinction also is consistent with ERISA provisions exempting "any assets of a plan which consist of insurance contracts or policies" from the requirement that plan assets be held in trust. 29 U.S.C. § 1103(b)(1). Where insurance policies fund the benefits provided under an employee benefit plan, they may be considered "assets of the plan." Where an insurance policy does not fund plan benefits, however, but is instead held as a "general, unpledged, and unrestricted asset" of the company, it is not an asset of the plan. City Federal's life insurance policies were not assets of the Claimants' plans.

The treatment of trust assets for ERISA funding purposes is instructive. If an employer creates a so-called "rabbi" trust to

1. As discussed below, the DCAs and SRIAs are not excess benefit plans and therefore are not entirely exempt from ERISA pursuant to 29 U.S.C. § 1003(b)(5). In this respect, they differ from the plans at issue in *Belsky.*

hold assets that finance a benefit plan, the plan remains "unfunded" for ERISA purposes. The assets are held in trust to pay benefits under an employee benefit plan, but the assets remain subject to the claims of general creditors in the event of the employer's insolvency or bankruptcy. As a result, the initial payment into the trust and the interest earned on trust assets are taxable to the employer, not the beneficiaries of the plan. *See* IRS Rev.Proc. 92–64, 1992–2 C.B. 422.

The Fourth Circuit has held that former executives of an insolvent institution were not entitled to recover assets of a rabbi trust from the Resolution Trust Corporation as receiver of the institution. *Goodman v. RTC*, 7 F.3d 1123 (4th Cir.1993). The court noted the executives were "unsecured creditors, who took the risks of being subject to the claims of general creditors for the benefits of favorable tax treatment—a gamble which failed to pay off in this case." *Id.* at 1129. Like the executives in *Goodman*, the Claimants accepted the risks associated with remaining unsecured creditors of City Federal in return for the benefit of favorable tax treatment.

Turning to the specific provisions of ERISA, the statute provides that its provisions in general apply to employee benefit plans, but with certain exceptions. One exception is an unfunded "excess benefit plan." 29 U.S.C. § 1003(b)(5). ERISA defines an excess benefit plan as

> a plan maintained by an employer solely for the purpose of providing benefits for certain employees in excess of the limitations on contributions and benefits imposed by section 415 of the Internal Revenue Code of 1986 ["IRC Section 415"]....

29 U.S.C. § 1002(36). The limitations on contributions and benefits imposed by IRC Section 415 are measured by percentages of the participant's compensation, which may change from year to year. For example, in the case of a defined benefit plan, the limit is an annual benefit which is the lesser of (A) $90,000 or (B) 100 percent of the participant's average compensation for his high 3 years. 26 U.S.C. § 415(b)(1). In the case of a defined contribution plan, the limit is an annual addition which is the lesser of (A) $30,000 (with a specified exception) or (B) 25 percent of the participant's compensation.

■ As a practical matter, because the limitations set forth in IRC Section 415 are not fixed, an employee benefit plan cannot serve the purpose of providing benefits in excess of these limitations without expressly referring either to IRC Section 415 or its substantive provisions. Thus, one may determine whether an employee benefit plan is an "excess benefit plan" by examining the terms of the plan itself. Because the City Federal Agreements do not refer either to IRC Section 415 or its substantive provisions, they are not excess benefit plans.

■ Because the plans are not excess benefit plans, they are subject to certain provisions of ERISA, including the preemption provision at ERISA Section 514, 29 U.S.C. § 1144. Section 514 provides in general that ERISA's provisions supersede any and all state laws insofar as they "relate" to any employee benefit plan. § 1144(a). A state law relates to an employee benefit plan if it "has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983); *First National Life Insurance Co. v. Sunshine–Jr. Food Stores*, 960 F.2d 1546, 1550 (11th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993). For this reason, any state law claims brought by the Claimants related to the Agreements, including their claims of unjust enrichment, are preempted by ERISA.

Claimants' state law claims may not simply be recharacterized as federal claims to circumvent the preemption requirement of ERISA. *Lea v. Republic Airlines, Inc.*, 903 F.2d 624, 632–33 (9th Cir.1990). "ERISA's civil enforcement provision, 29 U.S.C. § 1132(a) (1982), creates an exclusive remedial scheme." *Id.* at 631. "Congress's express inclusion of several specific remedies in the statute represents an implicit exclusion of remedies not listed." *Bishop v. Osborn Transportation, Inc.*, 838 F.2d 1173, 1174 (11th Cir.) (holding that ERISA did not permit employee to bring claim for punitive

damages against employer), *cert. denied,* 488 U.S. 832, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988).

In *Morales v. Pan American Life Insurance Co.,* 914 F.2d 83 (5th Cir.1990), a claimant sought recovery from a pension plan on the ground of unjust enrichment, claiming that he was entitled to the profit that resulted to the plan from the termination of the division in which he was employed. The claimant sought to bring the claim on the basis of federal common law. The Fifth Circuit rejected his claim, declaring that creation of a "federal common law of unjust enrichment ... would be inconsistent with ERISA's terms and policies." *Id.* at 87.

■ The enforcement provision of ERISA, section 502(a)(3), permits a participant or beneficiary of an employee benefit plan to obtain "appropriate equitable relief" to redress violations of ERISA or terms of the plan. 29 U.S.C. § 1132(a). The unjust enrichment claim asserted by the Claimants, however, cannot be brought pursuant to Section 502(a)(3), because their claim is neither (a) an enforcement of the terms of their plans nor (b) an enforcement of ERISA. Section 502(a)(3) provides:

A civil action may be brought—

   *    *    *    *    *    *

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan....

29 U.S.C. § 1132(a). Suits for equitable relief may be brought only to redress violations of ERISA or to enforce the terms of the plan. "The plain language of 29 U.S.C. § 1132(a) provides a cause of action *either* to enforce the substantive provisions of the Act *or* to recover benefits due or otherwise enforce the terms of a particular plan." *Barrowclough v. Kidder, Peabody & Co.,* 752

F.2d 923, 935 (3d Cir.1985) (emphasis added). *See also Bishop v. Osborn Transportation, Inc.,* 838 F.2d 1173, 1174 (11th Cir.) ("The six integrated civil enforcement provisions of section 1132(a) focus heavily on the beneficiary's right to enforce the terms of the plan...."), *cert. denied,* 488 U.S. 832, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988).

As discussed above, the Claimants are not entitled to the life insurance policies under the terms of their plans.[2] The Claimants' assertion that deferred compensation was used to fund City Federal's purchase of the life insurance policies is not an assertion that the terms of the plans were violated. It is an attempt to assert a claim for unjust enrichment outside the terms of the plans.

■ Although certain ERISA provisions apply to the Agreements, the Agreements are not subject to ERISA's vesting, funding and fiduciary responsibility requirements because they comprise so-called "top hat" plans. *Barrowclough v. Kidder, Peabody & Co.,* 752 F.2d 923, 930 (3rd Cir.1985). A "top hat" plan is one that is (a) unfunded and (b) maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees. *See* 29 U.S.C. §§ 1051(2) (exemption from participating and vesting requirements); 1081(a)(3) (exemption from minimum funding standards); 1101(a)(1) (exemption from fiduciary responsibility requirements).

City Federal entered into the Agreements specifically to provide deferred compensation to the Claimants, a select group of management or highly compensated employees. The DCA was established for "certain key officers" and the SRIA for "certain executives." For this reason, and because the plans established by the Agreements are unfunded, as discussed above, they are not subject to ERISA's vesting requirements. ERISA therefore does not give the Claimants any greater rights than they have under the terms of the Agreements themselves.

---

**2.** The Ninth Circuit in *Sokol v. Bernstein,* 803 F.2d 532, 538 (9th Cir.1986) (quoting S.Rep. No. 383, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. pp. 4639, 4890, 4989) suggested that a constructive trust might be imposed on

"plan assets" in an appropriate case pursuant to Section 502(a)(3). 803 F.2d at 538. As discussed above, however, the life insurance policies are not plan assets.

Claimants may not enforce rights that they do not have under ERISA. And they may not seek remedies that are beyond the terms of their contracts. *See also McRae v. Seafarers' Welfare Plan*, 920 F.2d 819, 821–23 (11th Cir.1991) (ERISA does not permit suits for "extra-contractual" damages). The Claimants are limited to the recovery of benefits provided under the terms of their Agreements with City Federal. Because they have no right to the insurance policies under the terms of the DCAs and SRIAs, they have no claim for relief under ERISA section 502(a)(3), 29 U.S.C. § 1132(a).

For the above-stated reasons, the Receiver is entitled to partial summary judgment awarding the Receiver recovery of the proceeds of the Policies.