881 F.2d 626
 11 Employee Benefits Ca 1273
 Sterling CALL, Ralph Robinson and Edison Willers, as
individuals; Sterling Call and Ralph Robinson as Plan
Administrators of the Phase II Corporation Restated Profit
Sharing Plan; and Sterling Call, Kenneth Friedman and
Edison Willers as Plan Administrators of the California
Etching Corporation Restated Profit Sharing Plan,
Plaintiffs-Appellants,
v.
SUMITOMO BANK OF CALIFORNIA, a California corporation, Ray
W. Sherman, Jr., an individual, Khateeb A. Lateef,
an individual, and Lateef Management
Associates, a partnership,
Defendants-Appellees.
 No. 88-15076.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 27, 1989.
Decided July 26, 1989.
 
 Edward D. Burmeister, Baker & McKenzie, San Francisco, Cal., for plaintiffs-appellants.
 Steven E. Schon, Howard, Rice, Nemerovski, Canady, Robertson & Falk, San Francisco, Cal., for defendants-appellees Lateef.
 Jeffrey H. Lowenthal, Leland, Parachini, Steinberg, Flinn, Matzger & Melnick, San Francisco, Cal., for defendant-appellee Sumitomo Bank of California.
 Richard Mark, San Francisco, Cal., for defendant-appellee Ray W. Sherman, Jr.
 Appeal from the United States District Court for the Northern District of California.
 Before BROWNING, PREGERSON and THOMPSON, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 Appellants brought this action in district court under the Employee Retirement Income Security Act, 29 U.S.C. Secs. 1001-1382 (1982) (ERISA or the Act). They alleged that appellees had breached fiduciary and other duties owed to two ERISA-regulated profit sharing plans of which appellants were administrators. The four appellants sought to recover as plan fiduciaries on behalf of the plans. In addition, the three appellants who were also plan participants sought to recover individually. After the district court granted appellees' motion to dismiss, appellants brought this appeal.
 
 
 2
 We must decide, first, whether ERISA plan fiduciaries who have, pursuant to a settlement with the Department of Labor, reimbursed money lost by two ERISA plans as the result of a breach of fiduciary duty may maintain an action for contribution from co-fiduciaries who did not participate in the DOL settlement. Second, we must decide whether fiduciaries who have reimbursed ERISA plans for losses resulting from a breach of fiduciary duty may maintain an action under ERISA against co-fiduciaries who did not reimburse the plans to require them to restore to the plans that amount of assets not recovered by the plans, even when the payments to the plans by the settling fiduciaries restored the balance of plan assets and liabilities which existed prior to the breaches. Third, we must determine whether the district court correctly dismissed appellants' ERISA claim of "non-fiduciary liability" against the escrow holder whose failure to record a trust deed contributed to a loss of plan assets.
 
 I. BACKGROUND
 
 3
 According to appellants' complaint, in December of 1980 the Administrative Committees of the Phase II Corporation Restated Profit Sharing Plan and the California Etching Corporation Restated Profit Sharing Plan ("the plans") decided to invest plan funds in a residential real estate project. Initially, the plans each invested $100,000. They later invested another $30,000 apiece. While the Administrative Committees were making these investment decisions--a legedly on the advice of appellees Khateeb Lateef and Lateef Management Associates ("Lateef")[1]--three of the appellants were participants in at least one of the plans. All four of the appellants were members of one or both of the plans' Administrative Committees. Thus, all appellants were fiduciaries for at least one of the plans.
 
 
 4
 As part of the real estate deal, appellee Sumitomo Bank, the trustee for the plans, and appellee Roy Sherman, the escrow holder, executed escrow instructions. These instructions provided that Sherman would deliver to Sumitomo a recorded deed of trust securing promissory notes that the plans had received in return for their investment. However, neither Sherman nor Sumitomo recorded the trust deed.
 
 
 5
 On June 4, 1984, the entity in which the plans had invested, Edwards Ridge, Ltd. ("ERL"), filed for reorganization under the Bankruptcy Act. In part because the plans were unsecured as a result of the failure to record the trust deed, the plans' investments were rendered worthless.
 
 
 6
 Approximately two years later, the United States Department of Labor (DOL) concluded an investigation of these events and determined that the plans' fiduciaries had violated their duties under ERISA in their initial participation and subsequent handling of the real estate investment. The DOL demanded that the plans' fiduciaries restore to the plans the money lost as a result of these breaches of fiduciary duty.
 
 
 7
 In response, appellants entered into a settlement with the DOL. Under the terms of the settlement,[2] appellants and the DOL calculated the full amount lost by the plans as $384,106, which consisted of the original $260,000 invested plus $124,106 in imputed earnings thereon. Pursuant to the settlement, appellants deposited $252,029 into the plans. The settlement provided that none of the money appellants deposited into the plans would inure to appellants' own accounts in the plans. In addition, appellants agreed to forfeit their claims against the plans in the amount of $132,077.[3] Appellants' deposit of $252,029 plus their forfeiture of $132,077 from their own accounts into the plans meant that the plans recovered the amount of the loss established by the DOL settlement: $252,029 + $132,077 = $384,106.[4]
 
 
 8
 According to appellants, following the settlement the plans' total assets were diminished from their pre-breach level (taking account of imputed interest) in the amount of $132,077. According to appellees, however, the liabilities of the plans were decreased in that same amount, due to appellants' forfeiture of claims against the plans; thus, following the settlement, the plans' balance of assets and liabilities remained unchanged from their pre-breach status. These different conceptualizations of the financial status of the plans following the settlement form the crux of one of the issues in dispute between the parties.
 
 
 9
 After reimbursing the plans, appellants brought the present action against appellees Lateef, Sumitomo Bank, and Sherman. Asserting that ERISA Sec. 502(a), 29 U.S.C. Sec. 1132(a), authorized them to bring suit, appellants contended that appellees were at least equally culpable for the loss to the plans and should therefore bear part of that loss. Appellants' first cause of action was for breach of fiduciary duty under ERISA. Suing on behalf of the plans as fiduciaries and, on the part of three of the appellants, as plan participants, appellants in their first cause of action sought, pursuant to Sec. 409(a) of ERISA, 29 U.S.C. Sec. 1109(a), to require all of the appellees "to make good to the Plans the full amount lost, $384,106, less the $252,029 reimbursed to the Plans by Plaintiffs, for a balance of $132,077." Complaint for Breach of Fiduciary Duty and Contribution ("Complaint"), CR 100 at 16.[5]
 
 
 10
 In their second cause of action, asserted by appellants in their capacity as fiduciaries, appellants sought contribution from all of the appellees in "an amount to be determined at the time of trial." Appellants based this claim on ERISA Sec. 409(a), 29 U.S.C. Sec. 1109(a).
 
 
 11
 Appellants' third cause of action, asserted on behalf of the plans by appellants in their capacity as fiduciaries and, on the part of three of them, as plan participants, sought "equitable relief" from Sherman for "non-fiduciary liability under ERISA." The theory underlying this claim was that Sherman had "knowingly participated in the breach of trust by Sumitomo in failing to ensure that the first deed was properly recorded." Complaint at 17. Therefore, appellants asserted, Sherman was "subject to non-fiduciary, third-party liability for violations of trust law" under ERISA Secs. 502(a)(3) and (a)(5), 29 U.S.C. Secs. 1132(a)(3) and (a)(5).[6] Complaint at 18.[7]
 
 
 12
 Appellees moved to dismiss the action for failure to state a claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6). On June 28, 1988, the district court granted the motion. Call v. Sumitomo Bank, 689 F.Supp. 1014 (N.D.Cal.1988). The court held, first, that appellants could not recover on their breach of fiduciary duty claim because their settlement with DOL made the plans whole, i.e., "put the plans in the same position they would have occupied absent the breach." Id. at 1016. The court concluded that "any claim on behalf of the plans for losses incurred by virtue of the failed real estate investment must fall, since the plans are not entitled to any further recovery." Id.
 
 
 13
 Second, the court rejected appellants' claim for contribution. Despite the "plausib[ility]" of appellants' contention that appellees had breached their fiduciary duties in connection with the real estate transaction, id., the court could find no indication that ERISA authorized an action for contribution from co-fiduciaries. Id. at 1019-20. Nor could the court discern a congressional intent that the courts imply such a right of action from ERISA. Id. at 1021. The court therefore held that no right of co-fiduciary contribution is available under ERISA. Id. at 1022.
 
 
 14
 Last, the court dismissed appellants' claim against Sherman, the escrow holder. The court based this decision on the reasoning it used in resolving the first two claims: the claim against Sherman, if asserted on behalf of the plans, "fails because the plan[s] ha[ve] been fully compensated." Id. Likewise, "[i]f [the claim] is asserted on behalf of plaintiffs individually, it is essentially a claim for individual contribution and therefore fails because ERISA permits no such claim." Id.
 
 
 15
 In this timely appeal, appellants take issue with all three of the district court's conclusions.
 
 II. STANDARD OF REVIEW
 
 16
 This court reviews de novo a trial court's decision to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Sax v. World Wide Press, Inc., 809 F.2d 610, 613 (9th Cir.1987). A Rule 12(b)(6) dismissal cannot be upheld "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); see also Gibson v. United States, 781 F.2d 1334,1337 (9th Cir.1986), cert. denied, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). All allegations of material fact contained in the complaint are taken as true and the reviewing court construes them in the light most favorable to the non-moving party. Sax, 809 F.2d at 613.
 
 III. DISCUSSION
 A. The Contribution Claim
 
 17
 Appellants and the DOL as amicus curiae offer several persuasive arguments in support of their position that ERISA may be interpreted to authorize a contribution cause of action among co-fiduciaries. However, we are foreclosed from considering these arguments because they were rejected in our recent decision in Kim v. Fujikawa, 871 F.2d 1427 (9th Cir.1989). In that case, we held that ERISA Sec. 409, 29 U.S.C. Sec. 1109, the provision upon which appellants in the instant case rely,[8] "only establishes remedies for the benefit of the plan " and therefore "cannot be read as providing for an equitable remedy of contribution in favor of a breaching fiduciary." Id. at 1432 (emphasis in the original).[9]
 
 
 18
 In Kim we explicitly rejected the appellant's argument that "ERISA does not and should not prohibit actions for contribution among fiduciary trustees." Id. We also rejected the arguments that, "in enacting ERISA, Congress provided for 'broad equitable remedies,' including contribution, ..." id., and that "actions for contribution are consistent with the language and purposes of the statute." Id. Moreover, quoting from the Supreme Court's decision in Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1984), we stated that "it seems clear that 'Congress did not intend to authorize other remedies [under ERISA] that it simply forgot to incorporate expressly.' " Kim, 871 F.2d at 1432 (quoting Russell, 473 U.S. at 146, 105 S.Ct. at 3092). We therefore rejected the notion that Congress, in enacting ERISA, had "implicitly intended to allow a cause of action for contribution under ERISA." Id. Indeed, we stated,
 
 
 19
 implying a right of contribution is particularly inappropriate where, as in this case, the party seeking contribution " 'is a member of the class [e.g., fiduciaries] whose activities Congress intended to regulate for the protection and benefit of an entirely distinct class [e.g., ERISA plans],' " and where there is no indication in the legislative history "that Congress was concerned with softening the blow on joint wrongdoers."
 
 
 20
 Id. at 1433 (quoting Texas Industries Inc. v. Radcliffe Materials, Inc., 451 U.S. 630, 639, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981) (no right to contribution under the antitrust laws)).
 
 
 21
 The Kim opinion is unambiguous and undistinguishable. Because Kim governs this case, we affirm the district court's dismissal of appellants' contribution claim.
 
 
 22
 Nonetheless, while affirming the district court on this point, we must address certain statements contained in the district court' discussion of ERISA. The district court expressed an overly restrictive view of the scope of relief afforded by ERISA. The district court, for example, stated that the Supreme Court's Russell opinion stood for the proposition that "ERISA's comprehensive civil remedy scheme reflects a congressional intent that the remedies explicitly provided be the only remedies available under the statute." Call v. Sumitomo Bank, 689 F.Supp. 1014, 1019 (N.D.Cal.1988) (emphasis in the original). Yet in Amalgamated Clothing & Textile Workers Union v. Murdock, 861 F.2d1406 (9th Cir.1988),[10] we declined to give Russell such a broad reading. Instead, the Murdock court, relying in part on "ERISA's adoption of common law trust principles," id. at 1411,[11] held that Russell permitted a remedy--imposition of a constructive trust on a fiduciary's ill-gotten profits in favor of plan participants and beneficiaries--not explicitly provided for by ERISA "where that is the only available means of removing the ill-gotten profits from a culpable fiduciary's hands." Id. at 1416. We pointed out that the constructive trust remedy "merely tailors the remedy already contained in Sec. 409(a) [fiduciary's disgorgement to the plan of profits earned by means of a breach of fiduciary duty] to fit [a] ... situation ... where the return of the alleged ill-gotten profits to the plan would not deprive an allegedly culpable fiduciary of those profits." Id.[12]
 
 
 23
 Murdock makes it clear that the language of ERISA Sec. 409(a) will not bear the restrictive interpretation the district court sought to place upon it.[13] Therefore, while the district court's holding that ERISA does not provide a contribution remedy for co-fiduciaries was correct and must be affirmed under Kim, the district court's discussion of ERISA does not represent the law of this circuit.
 
 B. The Fiduciary Duty Claim
 
 24
 Appellants' first cause of action, asserted in appellants' capacity as fiduciaries and, on the part of three of them, in their capacity as plan participants, sought to require appellees "to make good to the Plans the full amount lost, $384,106, less the $252,029 reimbursed to the Plans by Plaintiffs, for a balance of $132,077." The district court, finding that appellants' settlement with the DOL had made the plans whole, denied recovery, holding that "any claim on behalf of the plans for losses incurred by virtue of the failed real estate investment must fall, since the plans are not entitled to any further recovery." Call v. Sumitomo Bank, 689 F.Supp. at 1016. Appellants now argue that the district court erred in determining that the settlement put the plans in the same position they would have occupied absent the breach, and therefore improperly dismissed this claim.
 
 
 25
 Appellants' claim for breach of fiduciary duty[14] was based on ERISA Sec. 409(a), 29 U.S.C. Sec. 1109(a). This section states, in pertinent part:
 
 
 26
 Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the Court may deem appropriate, including removal of such fiduciary.
 
 
 27
 (Emphasis added.) Appellants have not alleged that appellees profited from their alleged breaches; therefore, to recover under Sec. 409(a), appellants must show that appellees' alleged breaches caused a "loss" to the plans.
 
 
 28
 Appellants, however, were unable to convince the district court that the plans had suffered any loss not compensated for by the DOL-approved settlement. The court stated:
 
 
 29
 Defendants contend that it is apparent from the allegations in the complaint that the plans were fully compensated for the losses suffered as a result of the real estate debacle. Plaintiffs respond that the plan was compensated only to the extent funds were actually deposited, thus creating a shortfall equal to the forfeitures. According to this argument, the plans were undercompensated because the forfeitures did not replenish plan assets. In other words, plan assets were not restored to the level where they would have been had the fiduciaries prudently invested the funds.
 
 
 30
 The fallacy in this [latter] argument is that it fails to acknowledge that, while the forfeitures did not increase plan assets, they did reduce plan liabilities. To the extent plaintiffs forfeited their accounts, the plans are no longer obligated to pay benefits. Clearly, therefore, the net effect of the reimbursement arrangement is to put the plans in the same position they would have occupied absent the breach.... Accordingly, any claim on behalf of the plan for losses incurred by virtue of the failed real estate investment must fall, since the plans are not entitled to any further recovery.
 
 
 31
 Call v. Sumitomo Bank, 689 F.Supp. at 1016.
 
 
 32
 In a hearing held July 27, 1988, the district court stated the same point in the following manner:
 
 
 33
 THE COURT: The net worth of the company is exactly the same. I appreciate the amount of cash is less, but that's balanced by the rights of the parties that [plaintiffs] gave up.
 
 
 34
 In other words, it is saying that the pool had $50,000. I have a right to claim $25,000 of it. $25,000 cash is gone, but I have given up my right to $25,000 so we are still back with $50,000.
 
 
 35
 There's really no change in the wholeness of the plan.
 
 
 36
 Reporter's Transcript at 3.
 
 Counsel for appellants responded:
 
 37
 There is a change, your Honor, because the pool with $50,000 could make investments that a pool with $25,000 could not make.
 
 
 38
 Id.
 
 
 39
 As the district court acknowledged, the factual allegations in appellants' complaint, taken as true, establish that, "but for the breaches by Defendants, the Plans would have assets which are $132,077 greater in value than they now possess...." The parties have not provided, and we have not found, any authority which answers the question whether a plan is fully compensated by a settlement that leaves the total amount of plan assets diminished from the level it would have had absent the breach, but puts the assets and liabilities of the plan in the same balance that existed prior to the breach. Nonetheless, we cannot accept the district court's conclusion that the plans lost nothing because the settlement returned the plans to their pre-breach "net" position. As the district court observed, the settlement did not restore the total amount of assets that would have existed absent the alleged breaches. In addition, the plans may have been deprived of the increased earning potential provided by a larger pool of assets.[15] Therefore, we reverse the district court's dismissal of this claim and remand so that the district court may determine the amount of the losses sustained by the plans and whether and to what extent the various appellees are liable for those losses.
 
 C. The Escrow Holder
 
 40
 Appellants' third cause of action sought "equitable relief" from Sherman, the escrow holder who failed to record the trust deed, for "non-fiduciary" liability under ERISA Secs. 502(a)(3) and (a)(5), 29 U.S.C. Secs. 1132(a)(3) and (a)(5).[16] The district court, following the reasoning it used to resolve the first two claims, dismissed this claim. The court held that if the claim against Sherman was asserted by appellants on behalf of the plans, the claim "fails because the plan[s] ha[ve] been fully compensated." Call v. Sumitomo Bank, 689 F.Supp. at 1022. If, on the other hand, the claim was being asserted by appellants on their own behalf, then it was "essentially a claim for individual contribution and therefore fails because ERISA permits no such claim." Id.
 
 
 41
 We have already rejected the district court's first reason for dismissing the claim against Sherman. See supra III B (settlement did not make plans whole). The district court's second reason, that the claim, if made on appellants' behalf, was "essentially" one for contribution, may also be incorrect. A recovery by the three appellants who are plan participants, for harm done to them in that capacity, would not necessarily represent "contribution" for payments made by these appellants to the plans in their role as fiduciaries.
 
 
 42
 It is not necessary, however, to decide whether the district court's reasons for dismissing the claim against Sherman were correct. We can affirm the district court's dismissal of the third cause of action on the ground that ERISA does not provide for non-fiduciary liability in this situation.
 
 
 43
 In Nieto v. Ecker, 845 F.2d 868 (9th Cir.1986), we were asked to decide whether an attorney who had performed services for an ERISA plan could be held liable under ERISA despite the fact that he was not a plan fiduciary. We held, first, that the attorney could not be sued under ERISA Sec. 409(a), 29 U.S.C. Sec. 1109(a),[17] because that section authorized actions only against fiduciaries. 845 F.2d at 873. We next addressed plaintiffs' contention that "the broad equitable powers conferred on [the court] by ERISA section 50wra)(3) ... authorizes the relief [plaintiffs] seek." Id.[18] We noted that in Foltz v. U.S. News & World Report, 627 F.Supp. 1143, 1167-68 (D.D.C.1986), the court held that the language of this section permitted the equivalent of an action for damages under section 409(a) against non-fiduciaries who participated in a breach of trust by fiduciaries. The Nieto court, however, refused to adopt Foltz 's reasoning. 845 F.2d at 873. We stated that "[p]ermitting recovery of damages under section 502(a)(3) would render section 409(a) superfluous, a result contrary to a fundamental canon of statutory construction." Id. (citations omitted).
 
 
 44
 Nevertheless, we held in Nieto that the attorney was subject to liability under ERISA because, as a "party in interest" under ERISA Sec. 3(14)(B), 29 U.S.C. Sec. 1002(14)(B),[19] the attorney was covered by ERISA's "prohibited transactions" provisions, Secs. 406(a)(1), 408(b), 29 U.S.C. Secs. 1106(a)(1), 1108(b).[20] We stated:
 
 
 45
 [ERISA] prohibits certain transactions between ERISA plans and their parties in interest. Some of the allegations in the complaint, if true, establish that [the attorney] participated in such "prohibited transactions" with the Funds by receiving excessive compensation for legal services, obtaining a loan from the Funds, and engaging in similar activities in violation of ERISA Secs. 406(a)(1), 408(b), 29 U.S.C. Secs. 1106(a)(1), 1108(b). Because these transactions are illegal under the Act, the district courts are authorized by section 502(a)(3) "to redress such violations."
 
 
 46
 Id. (citations and footnotes omitted). We observed, significantly, that to the extent that some of the attorney's alleged misdeeds did not fall within the definition of prohibited transactions, ERISA would not provide a remedy. Id. at 874 n. 7.
 
 
 47
 Nieto demonstrates that appellants have not stated a claim against Sherman for which ERISA provides relief. Appellants' third claim sought "equitable relief" under section 502(a)(3). By seeking equitable relief rather than damages, appellants evidently hoped to avoid Nieto 's rejection of a damages cause of action under Sec. 502(a)(3) against non-fiduciaries. However, while Sherman is a "party in interest" under Sec. 3(14)(B), 29 U.S.C. Sec. 1002(14)(B), and even if appellants may seek "equitable relief" under Sec. 502(a)(3),[21] appellants have not alleged facts that, if true, would establish that Sherman participated in any "prohibited transactions." In their complaint, appellants simply allege that Sherman "knowingly participated in the breach of trust by Sumitomo in failing to ensure that the first deed was properly recorded." Because Nieto 's holding extends only to cases in which a non-fiduciary "party in interest" engages in a "prohibited transaction," Nieto, 845 F.2d at 874 n. 7, appellants may not maintain their claim for "non-fiduciary liability" under ERISA.
 
 
 48
 Therefore, we affirm the district court's dismissal of appellants' third cause of action.[22]
 
 
 49
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. The parties shall bear their own costs.
 
 
 
 [1]
 Lateef, a registered investment advisor which provided advice concerning publicly traded securities to the plans, denies that it acted as an investment advisor or plan fiduciary with respect to the real estate investments at issue. Lateef concedes, however, that for purposes of this appeal the allegations in appellants' complaint must be taken as true
 
 
 [2]
 Appellants have not provided a copy of the DOL settlement, nor does it appear in the record. This court's inability to examine the agreement--assuming it was reduced to writing--is one reason we remand the case for further factfinding
 
 
 [3]
 The $132,077 figure represents forfeiture of $89,300 plus $42,777 in interest. See Complaint for Breach of Fiduciary Duty and Contribution, CR 100 at 17
 
 
 [4]
 It is unclear, however, whether the DOL settlement's total loss calculation is binding on the court for purposes of determining entitlement to recovery for fiduciary breach under ERISA. The parties did not address this issue in their briefs. At oral argument, however, counsel for appellants asserted that the DOL settlement, and in particular the settlement's total loss calculation, was not binding on the present action. On remand, the district court should decide whether to adopt the settlement's total loss figure, or whether to determine the loss amount independently. See infra III B (discussing whether plans suffered a "loss")
 
 
 [5]
 It is unclear from their Complaint how appellants wished this money to be allocated within the plans. In their appellate brief, however, appellants state that the $132,077 they sought "would be restored to Plaintiff's [appellants'] accounts in the Plans." Similarly, at oral argument counsel for appellants stated that his clients wanted any recovery to go into their own plan accounts
 Noting the appellants' evident intention that the funds sought be restored to their own accounts, the district court stated:
 While it does appear that plaintiffs seek by this claim to replenish their personal accounts within the plans, they insist that the claim is strictly on behalf of the plans. The language of the complaint, which demands that defendants "make good to the Plans," supports plaintiffs on this point. Accordingly, the Court assumes that this claim is asserted only on behalf of the plans and not by plaintiffs individually.
 Call v. Sumitomo Bank, 689 F.Supp. 1014, 1016 n. 2 (N.D.Cal.1988). We are not convinced that appellants seek recovery only on behalf of the plans and not individually. Rather, it appears that appellants seek to sue "on behalf of" the plans, but at the same time wish any recovery to accrue only to their own accounts in the plans. We note that ERISA has no provision which would permit damages recovered on behalf of a plan to be allocated entirely to the account of a particular plan participant. The district court will determine the proper allocation of any recovery obtained on remand.
 
 
 [6]
 In the statement of jurisdiction contained in their complaint, appellants asserted that the district court had jurisdiction over their "pendant state law claim" because it arose from the same nucleus of operative facts as the federal claims. However, appellants do not appear to have stated any state law claims. Their claim against Sherman does assert "violations of trust law," but it seeks relief for those violations under ERISA's "equitable relief" provisions
 
 
 [7]
 Appellants also sought reasonable attorneys' fees and costs on all counts pursuant to ERISA Sec. 502(g), 29 U.S.C. Sec. 1132(g)
 
 
 [8]
 Section 409 states, in pertinent part:
 Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.
 29 U.S.C. Sec. 1109(a).
 
 
 [9]
 The relevant facts of Kim are, briefly, as follows. During a strike the appellant, a union official, paid the salaries and expenses of union representatives out of an employee benefit fund he administered jointly with the appellee, an official of an employer bargaining association. Although they performed some services for the Fund, the representatives were substantially engaged in union activities; however, the union did not reimburse the Fund for the expenses paid by appellant to the representatives. When appellee discovered these facts, he sued under ERISA to hold appellant and the union representatives liable for all payments made to the representatives. The district court found that the payments made to the representatives violated the prohibited transaction provisions of ERISA and assessed the entire cost of the representatives' union operations against appellant personally. Appellant then filed a complaint seeking contribution under ERISA from appellee and other Fund trustees. The district court dismissed the complaint, holding that ERISA did not permit a fiduciary to file an action for contribution. This court affirmed
 
 
 [10]
 In Murdock, we held that ERISA Sec. 409(a), 29 U.S.C. Sec. 1109(a), authorized imposition of a constructive trust, on behalf of plan participants and beneficiaries, on allegedly ill-gotten gains obtained by a plan trustee in violation of ERISA's fiduciary obligations
 
 
 [11]
 The Supreme Court recently reaffirmed the important role of the common law of trusts in judicial interpretation of ERISA. In Firestone Tire and Rubber Co. v. Bruch, --- U.S. ----, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Court noted:
 ERISA abounds with the language and terminology of trust law.... ERISA's legislative history confirms that the Act's fiduciary responsibility provisions, 29 U.S.C. Secs. 1101-1114, "codif[y] and make[ ] applicable to [ERISA] fiduciaries certain principles developed in the evolution of the law of trusts." H.R.Rep. No. 93-533, p. 11 (1973), U.S.Code Cong. & Admin.News 1974, pp. 4639, 4649. Given this language and history, we have held that courts are to develop a "federal common law of rights and obligations under ERISA-regulated plans."
 Id. at 954 (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987)). See also Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 570, 105 S.Ct. 2833, 2840, 86 L.Ed.2d 447 (1985); Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 24 n. 26, 103 S.Ct. 2841, 2854, n. 26, 77 L.Ed.2d 420 (1983); Nieto v. Ecker, 845 F.2d 868, 872 (9th Cir.1988).
 
 
 [12]
 Return by the fiduciary of his allegedly ill-gotten profits to the plan would not have deprived the fiduciary of those profits in Murdock because the fiduciary had allegedly arranged for an amendment of the plan that provided that any plan surplus would revert to the sponsor, in this case the fiduciary, upon termination of the plan. 861 F.2d at 1409
 
 
 [13]
 Nor can we approve the district court's statement that "Russell and Sokol [v. Bernstein, 803 F.2d 532 (9th Cir.1986),] establish a rule that ERISA expressly authorizes only the employee benefit plan itself to bring an action on a theory of breach of a fiduciary duty under ERISA." Call v. Sumitomo Bank, 689 F.Supp. at 1020. As Sokol states, "ERISA grants no private right of action by a beneficiary qua beneficiary; rather, it accords beneficiaries the right to sue on behalf of the entire plan if a fiduciary breaches the plan's terms." 803 F.2d at 536 (emphasis added)
 
 
 [14]
 Appellants have standing to raise this claim as plan fiduciaries. ERISA Sec. 502(a)(2), 29 U.S.C. Sec. 1132(a)(2). Three of the appellants have standing as plan participants under this same provision
 
 
 [15]
 The record provides no information which could be used to determine whether the decrease in assets in fact resulted in foregone investment opportunities and lost earnings. For example, the total amount of plan assets before the alleged breaches and following the settlement is unknown. Nor have we been provided with information concerning investments and earnings that might have been available to the plans absent the breaches
 
 
 [16]
 ERISA Sec. 502(a)(5), 29 U.S.C. Sec. 1132(a)(5), authorizes the Secretary to "enjoin any act or practice which violates any provision of this subchapter" and to "obtain other appropriate equitable relief...." This provision does not authorize actions by plan participants or fiduciaries. Therefore, the viability of appellants' third cause of action depends on ERISA Sec. 502(a)(3), 29 U.S.C. Sec. 1132(a)(3)
 
 
 [17]
 See supra note 8
 
 
 [18]
 Section 502(a)(3) provides that a civil action may be brought
 by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan....
 29 U.S.C. Sec. 1332(a)(3).
 
 
 [19]
 Section 3(14)(B) provides that a "party in interest" is "a person providing services" to an employee benefit plan. 29 U.S.C. Sec. 1002(14)(B)
 
 
 [20]
 Section 406(a)(1) defines "prohibited transactions." The provision states:
 Except as provided in section 1108 of this title:
 (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect--
 (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
 (B) lending of money or other extension of credit between the plan and a party in interest;
 (C) furnishing of goods, services, or facilities between the plan and a party in interest;
 (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan; or
 (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.
 29 U.S.C. Sec. 1106(a)(1).
 Section 408(b), 29 U.S.C. Sec. 1108(b), creates a number of exceptions to section 406's prohibitions.
 
 
 [21]
 The Nieto court cited, with apparent approval, McDougall v. Donovan, 539 F.Supp. 596, 598-99 (N.D.Ill.1982). McDougall held that section 502(a)(3) permits a district court to order equitable relief against a party in interest who engages in a prohibited transaction
 
 
 [22]
 We do not decide whether Sherman was a "fiduciary" under ERISA. (The district court did not reach this question. Call v. Sumitomo Bank, 689 F.Supp. at 1016 n. 1.) Sherman is named as a fiduciary defendant in appellants' first and second causes of action. Because we affirm the district court's dismissal of the second claim (contribution), Sherman's liability depends, first, upon the district court's resolution, on remand, of the merits of appellants' first cause of action (breach of fiduciary duty), and, second, on whether appellants can establish that Sherman was in fact a fiduciary