Raymond MILLER, et al., Plaintiffs,

v.

NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY, a Corporation, et al., Defendants.

NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY, a Corporation, Cross–Claimant/Appellee,

v.

AD–ART SIGNS, INC., et al., Cross–Defendants,

and

California Physicians' Service, dba Blue Shield of California, Cross–Defendant/Appellant.

No. 89–15081.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 14, 1990.

Decided Oct. 5, 1990.

---

James H. Thompson, Jr., Hassard, Bonnington, Rogers & Huber, San Francisco, Cal., for cross-defendant/appellant.

John P. Lynch, Knight, Boland & Riordan, San Francisco, Cal., for cross-claimant/appellee.

Before CHOY, TANG and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

California Physicians' Service, dba Blue Shield of California ("Blue Shield") appeals the district court's final judgment in favor of Northwestern National Life Insurance Co. ("Northwestern"). The district court decided that California's insurance statutes, as interpreted by this court, require Blue Shield to reimburse Northwestern for medical benefits paid pursuant to a health insurance plan. We reverse.

I

Raymond Miller became totally disabled in April of 1983. At that time, he was covered primarily under his employer's insurance plan and secondarily as a dependent under his wife's insurance, issued by Northwestern. When Miller's primary insurance proved to be inadequate, he sought benefits under Northwestern's policy. That policy terminated on June 30, 1983, but it provided a one-year extension of benefits for totally disabled dependents covered under the policy. Blue Shield replaced Northwestern as of July 1, 1983, as Miller's wife's insurer.

Blue Shield paid for Miller's medical services from July 1, 1983 to July 12, 1983, but did not make further payments. After unsuccessfully seeking benefits from various insurers, Miller brought suit against several parties, including Northwestern and Blue Shield, in May of 1985. Northwestern made payments in June of 1985 of over $300,000 for medical care rendered on behalf of Miller, and it sought partial reimbursement from Blue Shield.

The district judge found that roughly $114,000 of the amount paid by Northwestern was incurred between June 30, 1983 and July 1, 1984. He held that Northwestern was entitled to reimbursement from Blue Shield in that amount under this

court's interpretation of the California Insurance Code. Blue Shield appeals. We review district court interpretations of state law de novo. *Union Central Life Insurance Co. v. Wernick,* 777 F.2d 499, 500 (9th Cir.1985).

## II

■ Blue Shield argues that Northwestern failed to state a claim upon which relief could be granted because suits between fiduciaries for reimbursement do not arise under ERISA. *See Call v. Sumitomo Bank of California,* 881 F.2d 626, 631 (9th Cir.1989). Blue Shield further maintains that ERISA preempts any state claims that Northwestern may have against Blue Shield. 29 U.S.C. § 1144(a) (1982).

ERISA does not preempt state laws which regulate insurance. 29 U.S.C. § 1144(b)(2)(A) (1982). Northwestern's claim arises under California statutes which regulate insurance, and a decision of this court interpreting those statutes. Cal. Insurance Code § 10128.3(c); *Pacific Mutual Life Insurance Co. v. American Guaranty Life Insurance Co.,* 722 F.2d 1498 (9th Cir.1984). Because the district court's jurisdiction was based in part on diversity, it had authority to hear Northwestern's state law claim. We, therefore, need not address whether ERISA recognizes a cause of action for reimbursement between prior carriers and replacement carriers because Northwestern has stated a non-preempted state law claim.

## III

■ The parties ask us to interpret California statutes enacted to protect totally disabled persons when group insurance coverage provided by one insurance carrier is discontinued and replaced with coverage by another insurer. Prior to the legislation, insurance carriers often did not provide benefits for totally disabled individuals after a policy's termination date. Replacement carriers would then refuse to cover preexisting disabilities, and disabled employees and disabled dependents were left without insurance.

As part of the response to the problem, the California legislature required prior carriers to extend benefits after a policy's termination date. During the period relevant to this appeal, the California Insurance Code provided that:

> Every policy providing hospital, medical or surgical benefits *shall be deemed to include a reasonable extension of such benefits upon discontinuance of the policy* if it provides benefits for covered expenses directly relating to the condition causing total disability existing at the time premium payments for the employee or dependent cease and incurred during a period of not less than 12 months thereafter, which period shall not be interrupted by discontinuance of the policy.
>
> Any extension of benefits may be terminated at such time as the employee or dependent is no longer totally disabled or at such time as coverage for the employee or dependent becomes effective under any replacement policy without limitation as to the disabling condition.

Cal.Insurance Code § 10128.2(d) (emphasis added).

The legislature also required replacement carriers to provide coverage without regard to preexisting disabilities:

> *No provision in a succeeding carrier's policy or replacement coverage which would operate to reduce or exclude benefits on the basis that the condition giving rise to benefits preexisted the effective date of the succeeding carrier's policy shall be applied* with respect to those employees and dependents validly insured under the prior carrier's policy on the date of discontinuance, except to the extent that benefits for such condition would have been reduced or excluded under the prior carrier's policy.

Cal.Insurance Code § 10128.3(c) (emphasis added).

Unfortunately, the California legislature did not lucidly explain which of these provisions predominates. It is unlikely that the legislature intended to mandate prior carriers to provide an extension of benefits *and at the same time* require replacement

**1394**

carriers to provide coverage for all preexisting conditions.

Although no California state court has construed the provisions of the California Insurance Code which govern this case, we examined the relevant statutes in *Pacific Mutual Life Insurance Co. v. American Guaranty Life Insurance Co.*, 722 F.2d 1498 (9th Cir.1984). The district court in *Pacific Mutual* had held that a prior carrier of group medical coverage could "terminate an extension of benefits to a totally disabled insured when replacement insurance becomes effective, shifting responsibility for payment of benefits to the replacement insurer." *Id.* at 1499. Because the district judge's interpretation of California law was not clearly wrong, we affirmed.

We reasoned that the extension of benefits provision could apply when employers do not obtain replacement coverage in the 60 day period. We noted that the extension of benefits terminates when "coverage for the employee or dependent becomes effective under any replacement policy without limitation as to the disabling condition." Cal.Insurance Code § 10128.2(d). Because § 10128.3(c) states that replacement coverage providers cannot place limitations on preexisting conditions, we held that the district court's conclusion, that prior carriers can terminate extensions of benefits whenever replacement coverage comes into effect, was not clearly wrong.

Since our decision in *Pacific Mutual*, we have adopted a de novo standard for reviewing a district court's interpretation of the law of the state in which it sits. *In re McLinn*, 739 F.2d 1395, 1400 (9th Cir.1984) (en banc). Although we held that the dis-

trict court's statutory interpretation in *Pacific Mutual* was not clearly wrong, we are not restrained from coming to a different conclusion when reviewing the statutes de novo. We have already noted that *Pacific Mutual* "does not represent an authoritative interpretation of California law binding upon this court." *Union Central Life Insurance*, 777 F.2d at 502 n. 7.

In *Union Central*, we again construed § 10128 of the California Insurance Code and retreated somewhat from the analysis in *Pacific Mutual*. The prior carrier in *Union Central* provided an extension of coverage to a totally disabled individual for twelve months after its policy expired. During those twelve months, the replacement carrier provided coverage for medical expenses not related to the disabling condition.

The replacement carrier sought to terminate all benefits when the prior carrier's extension of benefits expired pursuant to § 10128.3(b)(2). That provision permits replacement carriers to terminate coverage of totally disabled employees "the date the period of extension of benefits terminates."[1] The totally disabled insured claimed that *Pacific Mutual* required the replacement carrier to continue providing benefits. We disagreed and concluded that the more specific provision covering replacement coverage for totally disabled employees permitted the replacement carrier to terminate all benefits.

Blue Shield argues that we should not adopt the reasoning of the district court in *Pacific Mutual* because it distorts the meaning of several provisions of California's Insurance Code. First, the extension of benefits provision states that the exten-

---

1. The entire section reads:

[U]nder a succeeding carrier's policy ... the level of benefits shall not be lower than the benefits provided under the prior carrier's policy reduced by the amount of benefits paid by the prior carrier. Such employee or dependent shall continue to be covered by the succeeding carrier until the earlier of the following dates:

(1) The date coverage would terminate for an employee or dependent in accordance with the provisions of the succeeding carrier's policy, or

(2) In the case of an employee or dependent who was totally disabled on the date of discontinuance of the prior carrier's policy and entitled to an extension of benefits pursuant to subdivision (b) of Section 1399.62 of the Health and Safety Code, or subdivision (d) of Section 10128.2, the date the period of extension of benefits terminates, or, if the prior carrier's policy is not subject to this article, the date to which benefits would have been extended had the prior carrier's policy been subject to this article.

Cal.Insurance Code § 10128.3(b)(2).

sion can be terminated when "coverage ... becomes effective under any replacement policy without limitation as to the disabling condition." § 10128.2(d). This language suggests that in some cases replacement carriers may place limitations on totally disabling conditions. Under *Pacific Mutual*, replacement carriers can never place limitations on disabling conditions.

Second, § 10128.3(b) provides that the level of benefits provided by the succeeding carrier cannot be lower than the level provided under the prior carrier's policy "reduced by the amount of benefits paid by the prior carrier." The *Pacific Mutual* holding requires a replacement carrier to provide complete coverage as soon as its policy becomes effective. Under that decision, replacement carriers would never be able to reduce the amount of benefits paid by the amount provided by the prior carrier because the two would never provide benefits at the same time.

Third, the legislative scheme treats totally disabled employees differently from employees with other preexisting conditions. *See, e.g.*, § 10128.2(d), 10128.3(b)(2). *Pacific Mutual* eliminates the need for any distinction—succeeding carriers always pay for all covered medical expenses. If the legislature had intended for replacement carriers to cover all conditions for all employees, it would have had no reason to divide out the duties between prior and succeeding carriers in such detail.

Blue Shield also points to legislative history which supports its reading of the statutes. The Senate report stated that the legislation was "intended to clarify that a prior carrier will cover extended benefits for totally disabling conditions which exist on the date of discontinuance. Succeeding carriers will immediately cover all *other* disabilities." Senate Committee on Insurance and Financial Institutions, Analysis of SB 366 at 3–4 (1977) (emphasis added). Contrary to the result in *Pacific Mutual*, the legislature envisioned that prior and succeeding carriers would provide different benefits at the same time to totally disabled persons.

Finally, Blue Shield concedes that § 10128.3(c), relied on in *Pacific Mutual*, was intended to require replacement carriers to provide coverage for all preexisting conditions. However, as in excess insurance, a provision of *coverage* is not synonymous with a provision of *benefits*. Although replacement carriers provide *coverage* to totally disabled individuals, *benefits* for the disabling condition are provided by the prior carrier.

Northwestern does not point to any statutory inconsistency which flows from our reading of the statutes. We choose not to adopt the reasoning in *Pacific Mutual*. We hold that California statutes do not require replacement carriers to reimburse prior carriers for payments made on behalf of totally disabled persons during the prior carrier's statutorily mandated extension of benefits.

## IV

■ Blue Shield seeks fees on appeal under ERISA. 29 U.S.C. § 1132(g)(1). Even if ERISA applied here, we would not award attorneys' fees. It is therefore unnecessary for us to decide whether ERISA applies to suits between insurance carriers for reimbursement, and we expressly reserve that decision for a future case.

When deciding to award attorneys' fees under ERISA, we examine: "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions." *Hummel v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.1980).

The record does not indicate that Northwestern acted in bad faith. Northwestern reasonably relied on *Pacific Mutual* as an interpretation of California law. Although Blue Shield prevails in this appeal, we

would not award attorneys' fees under ERISA, if that statute applied here.

### V

We reverse the district court's final judgment requiring Blue Shield to reimburse Northwestern for medical care payments made on behalf of Raymond Miller. The district judge in this case relied on our prior decision in *Pacific Mutual*, affirming a district court's statutory interpretation because it was not clearly wrong. We believe the *Pacific Mutual* analysis misconstrues California law and we do not adopt it.

Each party shall bear their own costs on appeal.

REVERSED.